IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION AT COLUMBUS

FILED
RICHARD W. NAGEL
CLERK OF COURT

DEC -5 2024 1: 13 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-COLUMBUS

BRIAN KEITH ALFORD,

    Plaintiff,


-VS-


Annette Chambers Smith,

Dr. Andrew Eddy, Gary Wynn Peterson,

Patricia Horner, Marcy Vonderwell,

Joseph Sobecki, William Cool,

N. Neff, Todd Diehl, R. Huff, C. Spencer,

B. Stamper, B. Williams, B. Smith,

Lori Peterman,

    Defendants.

CASE NO:_2:24-cv-4184_____

Judge Sargus

Magistrate Judge Silvain

Amended Complaint

(Verified)

Jury Demand Endorsed

Hereon

Each Defendant is being

Sued in their Official and

Individual Capacities.


The Initial Complaint is

Adopted by reference and

Made a part hereof, including

All documents and/or exhibits

To be submitted during the

Discovery Process.

1

## I.  FORWARD

while this complaint may be lengthy, Plaintiff understands that many

prisoner cases are dismissed because the prisoner failed to detail a

chronology of events inferring retaliation. The following is about as short

and concise as Plaintiff can convey without compromising essential

information, and meet the requirements of Fed. R. Civ. P. 8.

## II.  JURISDICTION

1. This is a civil action authorized by 42 U.S.C. 1983, and 1985, but not

   limited to. This Court has jurisdiction under 28 U.S.C. 1331 and

   1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. 2283

   and 2284, and Rule 65 of the Federal Rules of Procedure.

2. This Court is an appropriate venue under 28 U.S.C. 1391 (b)(2) because

   it is within this District where the events giving rise to the claims

   herein occurred.

3. Plaintiff invokes pendant jurisdiction seeking applicable relief under

   Ohio Law.

## III.  PRELIMINARY STATEMENT

4. This action is brought against Defendants individually and/or working

   in concert with one another, for retaliation against Plaintiff for his

2

exercise of his First, Fourth, Eighth and Fourteenth Amendment rights (including access to the courts), in a conspiratorial magnitude in some instances, with one or more Defendants having knowledge and/or involvement in a campaign of harassment and/or retaliatory agenda, but not limited to, which resulted in actual injuries to Plaintiff, including but not limited to, loss of property, opportunity for freedom from incarceration, damage to Plaintiff's person and character, in ability to timely file documents necessary to challenge his conviction and/or conditions of confinement. This action also involves interference with civil rights, denial of due process, cruel and unusual punishment, deliberate indifference to Plaintiff's serious medical needs, discrimination (including racial) and a total inability to follow Institutional Policy, Rules and Procedures, selective punishment, but not limited to. Further, this action requests that this Court grant Declaratory Judgment and Injunctive relief where applicable, regarding OAC 5120-9-31(A), (H), (L), OAC 5120-932(A), (C), & (D), OAC 5120-9-04, DRC Policy 31-SEM-02 Policy IV and V(C), but not limited to.

## IV.   EXHAUSTION OF ANY ADMINISTRATIVE REMEDIES

5. Plaintiff exhausted all available remedies available to him prior to commencing this action.

V. PARTIES

6. At all relevant times in this complaint, Plaintiff was an inmate confined within the care and custody of Defendant Ohio Department of Rehabilitation and Corrections (ODRC), Serial Number A196-744.

7. At all times relevant to his complaint, Defendant Annette Chambers-Smith was the Director of Ohio Department of Rehabilitation and Corrections and is the highest authorization over the operations and management of the prison system in Ohio and those confined under its jurisdiction pursuant to R.C. 5120.01.

8. At all times relevant to this complaint, Defendant Dr. Andrew Eddy was the Chie Medical Examiner for ODRC and the highest authority over the operations and management of the Medical Department of ODRC pursuant to R.C. 5120.38.

9. At all times relevant to this complaint, Defendant William Cool was the Warden of Ross Correctional institution and the highest authority over the management and operations at the Ross Correctional Institution pursuant to R.C. 5120.38.

4

10. At all times relevant to this complaint, Gary Wynn Peterman was the Magistrate assigned to Cases in the Court of Claims of Ohio and oversaw the trial for Blake Williams for which Plaintiff was subpoenaed to testify on June 26th, 2024 at 9:30a.m.

11. At all times relevant to this complaint, Patricia Horner was an attorney appointed to represent Plaintiff I Alford V. Zilles, Case No.3:21-CV-1123.

12. At all times relevant to this complaint, Joseph Sobecki was an attorney appointed to replace Patricia Horner in Alford V. Zilles, Case No. 3:21-CV-1123.

13. At all times relevant to this complaint, Marcy Vonderwell was an attorney representing ODRC in Alford V. Zilles, Case No. 3:21-CV-1123 and Alford V. Pressley, et al, 2:24-CV-34.

14. At all times relevant to this complaint, Todd Diehl was the Inspector at the Ross Correctional Institution and responsible for the resolution of Informal Complaints and Grievances pursuant to OAC 5120-9-31.

15. At all times mentioned in this complaint, N. Neff was the Investigator at Ross Correctional Institution and responsible for investigating incidents at the Ross Correctional Institution.

16. At all times relevant to this complaint, C. Spencer was the Unit Manager of Housing Unit 3A/B where Plaintiff was formerly housed and responsible for the normal operations of the bed assignments.

17. At all times relevant to this complaint, B. Williams was the Unit Manager of Housing Unit 1A/B where Plaintiff currently resides and is responsible for the bed assignments and operations of the unit.

18. At all times relevant to this complaint, B. Stamper was the Sergeant assigned to Housing Unit 3A/B where Plaintiff was formerly housed and responsible for assisting in the assignment of bed moves in the Unit.

19. At all times relevant to this complaint, B. Smith was the Unit Sergeant of Housing Unit 1A/B and responsible for assisting in bed assignments and locating property, assisting in investigations completed by the Unit.

20. At all times relevant to this complaint, R. Huff was the Unit Manager of Housing Unit 6A/B and also assigned to facilitate classes/passes for Sinclair Community College.

21. At all times relevant to this complaint, Lori Peterman was the Unit Manager of Housing Unit D1/2 at the London Correctional Institution

and responsible for assisting prisoners with bedside visits, parole, and contacting the Court via telephone call for Case Status of pending cases.

VI.    CHRONOLGY OF EVENTS INFERING RETALIATION/DAMAGE RELATED TO THE INSTANT COMPLAINT.

22. On February 2nd, 2024 I was moved from cell 3B-123 to cell 1A-128 with a known PREA and homosexual inmate who smoked intoxicants. I would not refuse the assignment for fear of placement in RH, and was told I would be there temporarily. However, On February 15th, 2024 my cellmate Ellis smoked an intoxicant and had a complete "episode" causing multiple damage to himself and accused me of causing the damage. I was placed in RH on unit investigation, in spite of knowledge Ellis had lied, lost property, and later accused of not only assaulting Ellis but allegedly "touching his buttocks" when the assault could not be substantiated. Defendant N. Neff interviewed me, rather than Unit Staff B. Smith or B. Williams, and released me and my cell mate with no charges against either, and moved me back to 3B-123, and Ellis back to 1A. I was told not to say or do anything to him, and I complied. As a result of the failure to lock Ellis up for smoking toxicants and lying to

staff, I was forced to lose property, the ability to timely file documents with the Courts, subjected to ridicule and shame as a result of being placed in the cell with Ellis. Defendants B. Smith, B. Williams, and N. Neff's failure to properly investigate this issue resulted in damage to Plaintiff's property and person.

23. On November 11th, 2024 on Veterans Day Plaintiff was moved back to Unit 1A into the same position as in February 2024. Plaintiff advised he did not want to move to 1A and was told if he refused he would be placed in RH. Although Plaintiff signed up for the so called "Veterans Block" several months ago, Plaintiff advised Defendant B. Williams that he was apprehensive about moving based upon the incident in February and wanted to wait to ensure who his cell mate was. However, since November 11th, 2024 Plaintiff has contacted Defendant B. Williams, Defendant C. Spencer, B. Stamper regarding moving back to 3B-123 immediately, yet Plaintiff remains in the same situation as before. Defendants B. Williams, C. Spencer, B. Stamper refuse with comply with Plaintiff's request in retaliation for his continued litigation with various ODRC staff here at RCI, the "Good Ole Boy" network.

24. In November 2023 Defendant R. Huff accused Plaintiff of violating a

rule of moral turpitude while Plaintiff was in class at Sinclair College.

As a Result of the accusation, Plaintiff was damaged and has been on

academic probation with Sinclair College awaiting re-entry, and

ridiculed.

25. On June 28th, 2023 Defendant Patricia Horner, ESQ was assigned to

represent Plaintiff in Alford V. Zilles, Case No. 3:21-CV-1123. Since that

appointment, Defendant Horner has railroaded Plaintiff's case and

filed a motion to be removed for her inability to properly litigate the

case. Rather than provide Defendant Horner with relevant medical

records dating from 1996 to 1999 by ODRC, 2000 to 2011 by Federal

Bureau of Prisons, and 2011 to 2021 by ODRC in order to show a causal

connection to Plaintiff's injuries and ODRC's failure to provide properly

fitted footwear for circulatory problems diagnosed in 1996 at Belmont

Correctional Institution, now developed to neuropathy, which required

a size 12-3E boot, Defendant Horner allowed the Court to only limit the

medical records from 2018 to 2021. This caused damage to Plaintiff

person and cause of action.

26. On October 3rd, 2024 Defendant Sobecki replaced Defendant Horner, but failed to obtain Plaintiff's medical file from 1996 to 1999 by ODRC, 200 to 2011 by Federal Bureau of Prisons, and 2011 to 2021 by ODRC in order to show a causal connection to Plaintiff's injuries and ODRC's failure to provide properly fitted footwear for circulatory problems diagnosed in 1996 at Belmont Correctional Institution which required a size 12-3E boot. On October 19th, 2024 Defendant Sobecki informed Plaintiff that his case is going to be dismissed without prejudice. This caused damage to Plaintiff's person and cause of action.

27. On November 22dn, 2024 Defendant Marcy Vonderwell, an attorney representing ODRC in Alford V. Zilless, Case No. 3:21-CV-1123 and Alford V. Pressley, Case No. 2:24-Cv-34 called unit staff at RCI at approximately 11:15am and attempted to force Plaintiff to withdraw his Motion for Discovery Request filed on November 15th, 2024. Plaintiff advised he would not withdraw the motion. This was a clear violation of Judicial Misconduct to railroad the case. In addition, Defendant Vonderwell has attempted to railroad Alford V. Zilles, by offering Plaintiff a third pair of tennis shoes from the approved vendors, which Plaintiff cannot wear, and wanted to send Plaintiff for

therapy for damage to his feet and legs caused by ODRC's failure to provide properly fitted footwear since 2011.

28. Since 2011 Defendant Dr. Andrew Eddy denied Plaintiff treatment for a life-threatening illness ((Hep-c) which was the result of receiving tainted blood transfusion while in the Armed Forces in Tacoma, Washington, which has now been determined to have caused a B-12 deficiency as a result of hepato-intestinal disease and now neuropathy/nerve damages to Plaintiff's feet and legs. Dr. Donato Borrillo, MD, JD, MS determined these facts on October 18th, 2024.

29. Since March, 2024 Defendant Todd Diehl has refused to comply with the Public Records Act to provide pertinent records for continued litigation, and had failed to adequately, timely and properly address informal Complaints, Grievances against ODRC staff. This has caused damage to Plaintiff litigation and ability to file timely documents relevant to challenging his conditions of confinement.

30. On June 26th, 2024 Defendant Gary Wynn Peterson denied Plaintiff the right to give testimony for Blake Williams involving an unprovoked assault by RCI Staff against MR. Williams, in spite of Plaintiff being subpoenaed to testify. Defendant William Cool was put on notice of

these violations by the failure of N. Neff or other staff to ensure that Plaintiff was called to testify in Mr. Williams behalf, yet alleged he had no knowledge and that no one notified him regarding these violations. His complacency denied me the right to testify regarding wrongs committed by ODRC staff.

31. Defendant Lori Peterman denied Plaintiff the right to call and check the status of his case on appeal in Alford V. Mohr, 1:16-CV-00645 because "Gary Mohr pays my bills and you don't give a fuck"!. Defendant Peterman also denied Plaintiff the right to a bedside visit for his dying mother, and the right to timely telephone communication, by forcing Plaintiff to wait for one and one-half hours before reaching his already diseased mother Louella Alford, and then attempted to invite Plaintiff into the "Quiet Room" porter closet when Plaintiff began to week after learning of his mother's passing. Defendant Peterman then order another employee to construct an erroneous conduct report of moral turpitude, and when Plaintiff was placed in Limited Privilege Housing for 32 days Defendant Peterman constructed a second erroneous conduct report after Plaintiff reported Defendant Peterman to PREA Tips Line for sexual harassment. Plaintiff

was transferred from level 1A to level 4 and received a sixty (60)

month continuance by Adult Parole Authorities, in addition to

losing/destruction of one 2.4 legal box with active legal documents

contained in it, which has prevented Plaintiff from pursuing timely

litigation on his conviction and conditions of confinement.

32. Defendant Annette Chambers-Smith was placed on written notice of

these constitutional violations as was Correctional Institution

Inspection Committee yet failed to act and acquiesed in the violations.

VII.   LEGAL CLAIMS

33. Each Defendant worked individually and in concert with one another

at times, to commit the constitutional violations named herein.

VIII.   PRAYERFOR RELIEF

a. A declaration that the acts/omissions committed herein violated

Plaintiff's rights under the United States and Ohio Constitution.

b. A preliminary injunction and temporary restraining order ordering

Defendants to refrain from interfering with Plaintiff's constitutional

rights.

c. Nominal damages authorized by law and determined by a jury of

this Court.

    d.  Punitive damages for Plaintiff in excess of $1,000,000.00 against

        each defendant with the exact amount to be determined by a jury

        against each Defendant.

    e.  A jury trial on all issues triable by jury.

    f.  Plaintiff's cost in this suit.

    g.  Appointment of counsels.

    h.  Any additional relief this Court deems just, proper and equitable.

**VERIFICATION:**

    I HEREBY SWEAR UNDER PENALTY OF PERJURY THAT THE INFORMATION

CONTAINED HEREIN IS TRUE, ACCURATE AND COMPLETE TO THE BEST OF MY

KNOWLEDGE AND BELIEF, PURSUANT TO 8 U.S.C. 1746.

**BRIAN KEITH ALFORD A196-744**

**Ross Correctional Institution**

**P.O. Box 7010**

**Chillicothe, Ohio 45601**

**Plaintiff, *pro se***

14