IN THE UNITED STATES DISTRICT COURT

FOR THE SOTHERN DISTRICT OF OHIO

EASTERN DIVISION AT COLUMBUS



| | |
|---|---|
| BRIAN KEITH ALFORD, | CASE NO: 2:24-CV-04184 |
| Plaintiff, | |
| -vs- | Third Amended Complaint |
| Annette Chambers-Smith, Director, | Jury Demand Endorsed |
| Dr. Andrew Eddie, Gary Wynn Peterson, | Herein |
| Patricia Horner, Marcy Vonderwell, | Each Defendant is being sued |
| Joseph Sobecki, William Cool, Warden, | in their Official and Individual |
| N. Neff, Investigator, R. Huff, Unit Manager, | Capacities. |
| C. Spencer, Unit Manager, B. Stamper, B. Williams, | |
| Unit Manager, B. Smith, Lori Peterman, | |
| J. Stegall, Principle, Officer Farley, Ms. Drieabach, | |
| Secretary, | |
| Defendants. | The Initial complaint is Adopted by reference and Made a part of hereof, Including all documents and/ Or exhibits to be submitted during the Discovery Process |

1

I. **FORWARD**

while this complaint may be lengthy, Plaintiff understands that many prisoner cases are dismissed because the prisoner failed to detail a chronology of events inferring retaliation. The following is about as short and concise as Plaintiff can convey without compromising essential information, and meet the requirements of Fed. R. Civ. P. 8.

II. **JURISDICTION**

1. This is a civil action authorized by 42 U.S.C. 1983, and 1985, but not limited to. This Court has jurisdiction under 28 U.S.C. 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. 2283 and 2284, and Rule 65 of the Federal Rules of Procedure.

2. This Court is an appropriate venue under 28 U.S.C. 1391 (b)(2) because it is within this District where the events giving rise to the claims herein occurred.

3. Plaintiff invokes pendant jurisdiction seeking applicable relief under Ohio Law.

III. **PRELIMINARY STATEMENT**

4. This action is brought against Defendants individually and/or working in concert with one another, for retaliation against Plaintiff for his

exercise of his First, Fourth, Eighth and Fourteenth Amendment rights (including access to the courts), in a conspiratorial magnitude in some instances, with one or more Defendants having knowledge and/or involvement in a campaign of harassment and/or retaliatory agenda, but not limited to, which resulted in actual injuries to Plaintiff, including but not limited to, loss of property, opportunity for freedom from incarceration, damage to Plaintiff's person and character, in ability to timely file documents necessary to challenge his conviction and/or conditions of confinement. This action also involves interference with civil rights, denial of due process, cruel and unusual punishment, deliberate indifference to Plaintiff's serious medical needs, discrimination (including racial) and a total inability to follow Institutional Policy, Rules and Procedures, selective punishment, but not limited to. Further, this action requests that this Court grant Declaratory Judgment and Injunctive relief where applicable, regarding OAC 5120-9-31(A), (H), (L), OAC 5120-932(A), (C), & (D), OAC 5120-9-04, DRC Policy 31-SEM-02 Policy IV and V(C), but not limited to.

IV.     EXHAUSTION OF ANY ADMINISTRATIVE REMEDIES

5. Plaintiff exhausted all available remedies available to him prior to commencing this action.

V.   PARTIES

6. At all relevant times in this complaint, Plaintiff was an inmate confined within the care and custody of Defendant Ohio Department of Rehabilitation and Corrections (ODRC), Serial Number A196-744.

7. At all times relevant to his complaint, Defendant Annette Chambers-Smith was the Director of Ohio Department of Rehabilitation and Corrections and is the highest authorization over the operations and management of the prison system in Ohio and those confined under its jurisdiction pursuant to R.C. 5120.01.

8. At all times relevant to this complaint, Defendant Dr. Andrew Eddy was the Chie Medical Examiner for ODRC and the highest authority over the operations and management of the Medical Department of ODRC pursuant to R.C. 5120.38.

9. At all times relevant to this complaint, Defendant William Cool was the Warden of Ross Correctional institution and the highest authority over the management and operations at the Ross Correctional Institution pursuant to R.C. 5120.38.

4

10. At all times relevant to this complaint, Gary Wynn Peterman was the Magistrate assigned to Cases in the Court of Claims of Ohio and oversaw the trial for Blake Williams for which Plaintiff was subpoenaed to testify on June 26th, 2024 at 9:30a.m.

11. At all times relevant to this complaint, Patricia Horner was an attorney appointed to represent Plaintiff I Alford V. Zilles, Case No.3:21-CV-1123.

12. At all times relevant to this complaint, Joseph Sobecki was an attorney appointed to replace Patricia Horner in Alford V. Zilles, Case No. 3:21-CV-1123.

13. At all times relevant to this complaint, Marcy Vonderwell was an attorney representing ODRC in Alford V. Zilles, Case No. 3:21-CV-1123 and Alford V. Pressley, et al, 2:24-CV-34.

14. At all times relevant to this complaint, Todd Diehl was the Inspector at the Ross Correctional Institution and responsible for the resolution of Informal Complaints and Grievances pursuant to OAC 5120-9-31.

15. At all times mentioned in this complaint, N. Neff was the Investigator at Ross Correctional Institution and responsible for investigating incidents at the Ross Correctional Institution.

5

16. At all times relevant to this complaint, C. Spencer was the Unit Manager of Housing Unit 3A/B where Plaintiff was formerly housed and responsible for the normal operations of the bed assignments.

17. At all times relevant to this complaint, B. Williams was the Unit Manager of Housing Unit 1A/B where Plaintiff currently resides and is responsible for the bed assignments and operations of the unit.

18. At all times relevant to this complaint, B. Stamper was the Sergeant assigned to Housing Unit 3A/B where Plaintiff was formerly housed and responsible for assisting in the assignment of bed moves in the Unit.

19. At all times relevant to this complaint, B. Smith was the Unit Sergeant of Housing Unit 1A/B and responsible for assisting in bed assignments and locating property, assisting in investigations completed by the Unit.

20. At all times relevant to this complaint, R. Huff was the Unit Manager of Housing Unit 6A/B and also assigned to facilitate classes/passes for Sinclair Community College.

21. At all times relevant to this complaint, Lori Peterman was the Unit Manager of Housing Unit D1/2 at the London Correctional Institution

6

and responsible for assisting prisoners with bedside visits, parole, and contacting the Court via telephone call for Case Status of pending cases.

VI. CHRONOLGY OF EVENTS INFERING RETALIATION/DAMAGE RELATED TO THE INSTANT COMPLAINT.

22. On February 2nd, 2024 I was moved from cell 3B-123 to cell 1A-128 with a known PREA and homosexual inmate who smoked intoxicants. I would not refuse the assignment for fear of placement in RH, and was told I would be there temporarily. However, On February 15th, 2024 my cellmate Ellis smoked an intoxicant and had a complete "episode" causing multiple damage to himself and accused me of causing the damage. I was placed in RH on unit investigation, in spite of knowledge Ellis had lied, lost property, and later accused of not only assaulting Ellis but allegedly "touching his buttocks" when the assault could not be substantiated. Defendant N. Neff interviewed me, rather than Unit Staff B. Smith or B. Williams, and released me and my cell mate with no charges against either, and moved me back to 3B-123, and Ellis back to 1A. I was told not to say or do anything to him, and I complied. As a result of the failure to lock Ellis up for smoking toxicants and lying to

staff, I was forced to lose property, the ability to timely file documents with the Courts, subjected to ridicule and shame as a result of being placed in the cell with Ellis. Defendants B. Smith, B. Williams, and N. Neff's failure to properly investigate this issue resulted in damage to Plaintiff's property and person.

23. On November 11th, 2024 on Veterans Day Plaintiff was moved back to Unit 1A into the same position as in February 2024. Plaintiff advised he did not want to move to 1A and was told if he refused he would be placed in RH. Although Plaintiff signed up for the so called "Veterans Block" several months ago, Plaintiff advised Defendant B. Williams that he was apprehensive about moving based upon the incident in February and wanted to wait to ensure who his cell mate was. However, since November 11th, 2024 Plaintiff has contacted Defendant B. Williams, Defendant C. Spencer, B. Stamper regarding moving back to 3B-123 immediately, yet Plaintiff remains in the same situation as before. Defendants B. Williams, C. Spencer, B. Stamper refuse with comply with Plaintiff's request in retaliation for his continued litigation with various ODRC staff here at RCI, the "Good Ole Boy" network.

8

24. In November 2023 Defendant R. Huff accused Plaintiff of violating a rule of moral turpitude while Plaintiff was in class at Sinclair College. As a Result of the accusation, Plaintiff was damaged and has been on academic probation with Sinclair College awaiting re-entry, and ridiculed.

25. On June 28th, 2023 Defendant Patricia Horner, ESQ was assigned to represent Plaintiff in Alford V. Zilles, Case No. 3:21-CV-1123. Since that appointment, Defendant Horner has railroaded Plaintiff's case and filed a motion to be removed for her inability to properly litigate the case. Rather than provide Defendant Horner with relevant medical records dating from 1996 to 1999 by ODRC, 2000 to 2011 by Federal Bureau of Prisons, and 2011 to 2021 by ODRC in order to show a causal connection to Plaintiff's injuries and ODRC's failure to provide properly fitted footwear for circulatory problems diagnosed in 1996 at Belmont Correctional Institution, now developed to neuropathy, which required a size 12-3E boot, Defendant Horner allowed the Court to only limit the medical records from 2018 to 2021. This caused damage to Plaintiff person and cause of action.

9

26. On October 3rd, 2024 Defendant Sobecki replaced Defendant Horner, but failed to obtain Plaintiff's medical file from 1996 to 1999 by ODRC, 200 to 2011 by Federal Bureau of Prisons, and 2011 to 2021 by ODRC in order to show a causal connection to Plaintiff's injuries and ODRC's failure to provide properly fitted footwear for circulatory problems diagnosed in 1996 at Belmont Correctional Institution which required a size 12-3E boot. On October 19th, 2024 Defendant Sobecki informed Plaintiff that his case is going to be dismissed without prejudice. This caused damage to Plaintiff's person and cause of action.

27. On November 22dn, 2024 Defendant Marcy Vonderwell, an attorney representing ODRC in Alford V. Zilless, Case No. 3:21-CV-1123 and Alford V. Pressley, Case No. 2:24-Cv-34 called unit staff at RCI at approximately 11:15am and attempted to force Plaintiff to withdraw his Motion for Discovery Request filed on November 15th, 2024. Plaintiff advised he would not withdraw the motion. This was a clear violation of Judicial Misconduct to railroad the case. In addition, Defendant Vonderwell has attempted to railroad Alford V. Zilles, by offering Plaintiff a third pair of tennis shoes from the approved vendors, which Plaintiff cannot wear, and wanted to send Plaintiff for

therapy for damage to his feet and legs caused by ODRC's failure to provide properly fitted footwear since 2011.

28. Since 2011 Defendant Dr. Andrew Eddy denied Plaintiff treatment for a life-threatening illness ((Hep-c) which was the result of receiving tainted blood transfusion while in the Armed Forces in Tacoma, Washington, which has now been determined to have caused a B-12 deficiency as a result of hepato-intestinal disease and now neuropathy/nerve damages to Plaintiff's feet and legs. Dr. Donato Borrillo, MD, JD, MS determined these facts on October 18th, 2024.

29. Since March, 2024 Defendant Todd Diehl has refused to comply with the Public Records Act to provide pertinent records for continued litigation, and had failed to adequately, timely and properly address informal Complaints, Grievances against ODRC staff. This has caused damage to Plaintiff litigation and ability to file timely documents relevant to challenging his conditions of confinement.

30. On June 26th, 2024 Defendant Gary Wynn Peterson denied Plaintiff the right to give testimony for Blake Williams involving an unprovoked assault by RCI Staff against MR. Williams, in spite of Plaintiff being subpoenaed to testify. Defendant William Cool was put on notice of

11

these violations by the failure of N. Neff or other staff to ensure that Plaintiff was called to testify in Mr. Williams behalf, yet alleged he had no knowledge and that no one notified him regarding these violations. His complacency denied me the right to testify regarding wrongs committed by ODRC staff.

31. Defendant Lori Peterman denied Plaintiff the right to call and check the status of his case on appeal in Alford V. Mohr, 1:16-CV-00645 because "Gary Mohr pays my bills and you don't give a fuck"!. Defendant Peterman also denied Plaintiff the right to a bedside visit for his dying mother, and the right to timely telephone communication, by forcing Plaintiff to wait for one and one-half hours before reaching his already diseased mother Louella Alford, and then attempted to invite Plaintiff into the "Quiet Room" porter closet when Plaintiff began to week after learning of his mother's passing. Defendant Peterman then order another employee to construct an erroneous conduct report of moral turpitude, and when Plaintiff was placed in Limited Privilege Housing for 32 days Defendant Peterman constructed a second erroneous conduct report after Plaintiff reported Defendant Peterman to PREA Tips Line for sexual harassment. Plaintiff

12

was transferred from Level 1A to Level 4A and received a sixty month (60) continuance by Adult Parole Authorities, in addition to loss/destruction of one 2.4 legal box with active legal documents contained in it, which has prevented Plaintiff from timely continued litigation attacking his conviction and conditions of confinement.

32. On May 23rd, 2025 Plaintiff obtained copies from law library at R.C.I. that were missing every other page, and the document was due in Federal Court on May 19th, 2025. Prior to this date, Plaintiff had attempted to obtain access to law library in order to copy the document for mailing, without success. Current appeal of grievances against Mr. Stegall, Principle have been pending related to access to law library to complete litigation, the missing legal copies, and e-filing of a document to Supreme Court of Ohio which did not arrive, and when the originals were returned pages were missing. Mr. Stegall was untruthful by informing the Inspector when this was investigated that he advised he could not assure the document e-file would go through because I was the first person who has e-filed to Supreme Court of Ohio. This was totally untrue as I was never advised he could not ensure the document would go through, In addition, Mr. Wately, the law clerk at R.C.I. was the first person to e-file to Supreme Court and had no problems with the document going through.

13

33. On May 27th, when Mr. Stegall had not issued pass for Plaintiff to have the copies corrected per three kites sent to Mr. Stegall, Plaintiff went The North School to leave his information for Mr. Stegall in order to obtain a speedy pass. Officer Farley took the information, and agree to pass the information on to Mr. Stegall. This information was given to Officer Farley in the morning of May 27th, 2025. At the noon meal, Plaintiff checked back with Officer Farley to ensure Mr. Stegall had been given the information, with time lines already missed, and Officer Farley assured Plaintiff she had conveyed the information to Mr. Stegall, that she had done her job, and that was all she could do. I thanked her, and exited the North School.

34. On May 28th, 2025 Plaintiff still had not received a pass, nor had Mr. Stegall responded to the urgency of Plaintiff's kites. Plaintiff checked back with Officer Farley on the morning of May 28th, 2025 to once again enquire about his status with Mr. Stegall and the copies. At that time, Officer Farley advised Plaintiff that Mr. Stegall was not in yet, but that she was told that if I showed up at North School a third time that I would be cuffed and taken to Temporary Housing. Upon arrival, Officer Farley attempted to convince Lt. Cunningham that I had been warned three separate times I was out of place, not to return, and this was a falsity as her body cam and the footage I North School on May 27th, and 28th,

14

2025 will reveal. I was charge with being out of place by Mr. Stegall, based upon the erroneous information provided by Officer Farley regarding my alleged failure to respond to three direct orders not to return to the school area, placed in Limited Privilege Housing Unit for six days, found guilty based upon the murder of Officer Lansing on December 25th, 2024, and released on June 2nd, 2025. As a result of these actions, Plaintiff was not able to file timely documents in federal court relating to several civil cases against ODRC staff.

35. On July 5th, 2025 my Son Joshua Alford was not able to video visit with me on Gettingout.visitme.com and I contacted Ms. Driesbach regarding this issue. Ms. Driesbach agreed to correct the issue, but I later learned that she had corrupted my visiting/deposits section which prevented my son from depositing funds onto my telephone or commissary account. After contacting Unit Staff, and filing of ICR and grievance, I was told that there were not blocks at the institution level, or at cashier's office, and that my son should be able to make deposits without problems. However, to date he cannot make deposits on telephone or commissary account, which prevented me from shopping on July 25th, 2025 and I still am unable to have video visits with my son. This action was done in retaliation for filing of civil action against C. Spencer, Unit Manager who is Ms. Driesbachs' supervisor.[see attached documents] GTL informed my son

15

they have no blocks on his account, and the issue is institutional, yet it has not been resolved.

36. Defendant Annette Chambers-Smith was put on notice of these violations, yet failed to act or acquiesced in the constitutional violations listed herein.

## VII. LEGAL CLAIMS

37. Each Defendant worked individually and /or in concert with one another at times, to commit the violations committed herein.

## VII. PRAYER FOR RELIEF

A. A declaration that the acts/omissions committed herein violated Plaintiff's rights under the United States and Ohio Constitutions,

B. Preliminary injunction and temporary restraining order to prevent further violations by these and future defendants from violations of Plaintiff's constitutional rights.

C. Nominal damages authorized by law and determined by a jury of this court.

D. Punitive damages for Plaintiff against each defendant in excess of $1,000,00.00 with the exact amount to be determined by a jury.

E. A jury trial on all issued triable by jury.

16

17

F. Plaintiff's cost in this suit.

G. Appointment of counsel.

H. Any additional relief this court deems just, proper, and equitable.

VERIFICATION:

I hereby swear under penalty of perjury that the information contained herein is true, accurate and complete to the best of my knowledge and belief pursuant to 28 U.S.C. 1746.

Brian Keith Alford A196-744

Ross Correctional Institution

P.O. Box 7010

Chillicothe, Ohio 45601

Plaintiff, *pro se*

Alford wanted me to check as to why he can't Video visit with his family. Basically his DOTS/GTL accounts are a hot mess. Nothing matches. I updated everything I could. Added emails to DOTS that were available. Just print this out and give it to him. He can let his family know.

His daughter had 2 accounts on GTL. 1 was still pending. I blocked that account. I added her email to her DOTS acct. He needs to make sure when he tries to connect with her that he uses this email: memelivee@gmail.com

Pending

Alford, Rayna
raynaalford@aol.com

Elma Alford (wife) is not an approved visitor per DOTS so she can't do a video visit.

His sister Cherita Alford does not have an account on GTL. If she does it is not under a name that matches her ODRC account name.

I added his son Joshua Alfords email to his ODRC acct. JALFORD 36407 GMAIL.COM

Added Luoella Alfords email acct on ODRC. She doesnt have an address listed in ODRC or GTL. Plus her GTL acct is still pending by GTL. Probably because she hasn't finished her profile by adding all the necessary information.

Alford, Louella                                                                              Pending
hazleyesflowers@gmail.com

Willie Alford does not have a GTL account

Mary Davidson and Deborah Sanders are not approved visitors per ODRC.

Twila Grigsby - added her email to DOTS

Carla McIntosh does not have a GTL account - Also do not have her Zip code her ODRC account.

Briyuan Smith - added her Email to her ODRC acct - her GTL account is still pending by GTL. Theres another acct on GTL - Necole Smith that is approved, this might be her also. If so it doesn't match her name in ODRC so it won't work.

Pending

Smith, Briyuan
briyuan.smith@gmail.com

Tanda Utre does not have a GTL account

Geraldine Williams does not have a GTL account.

| Print Requester | Booking # | Request Date | Requested Ink | Room | Location |
|---|---|---|---|---|---|
| BRIAN ALFORD | A196744 | 07/14/25 06:21 EDT | Black/White | H2A | RCI,H2,A,132T,0000 |

From: Joshua Alford on 07/05/25 15:26 EDT



**Payment Declined**

Your deposit could not be completed at this time. Please contact customer service at 1 (866) 516-0115.

**WHAT WOULD YOU LIKE TO DO NEXT?**

Please select Make a Deposit or Return Home.



Try Payment Again          Return Home



```
*******************************
Ross Correctional Institution
Store: RCI-RCI-Counter
Shopping Cycle: 2 A
Receipt #: 700426
7/25/2025 12:55:12 PM
Inmate Name: ALFORD, BRIAN
Inmate Id: A196744
Location: RCI,H2,A,,,132T
Beginning Spendable Balance: $0.09
Operator: mitchellrl
-----------------------------------
Cost of the following items charged to
my personal account:
-----------------------------------
PEN BLACK INK MED ROUND STIC BIC
P                -1@  $0.15ea = ($0.15)
PEN BLACK INK MED ROUND STIC BIC
P                 1@  $0.15ea = $0.15
-----------------------------------
Normal Total:   $0.00
Special Total:  $0.00
Tax:            $0.00
-----------------------------------
Grand Total:    $0.00
-----------------------------------
Spendable Balance: $0.09
POS Balance:       $0.09
-----------------------------------
Received By:


-----------------------------------
ALL SALES FINAL!
-----------------------------------
Ross Correctional Institution
Store: RCI-RCI-Counter
Receipt #: 700426
7/25/2025 12:55:12 PM
*******************************
```





ALFORD 196744

$0.09