# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BRIAN KEITH ALFORD,**

    **Plaintiff,**

  v.

**ANNETTE CHAMBERS-SMITH et al.,**[1]

    **Defendants.**

Case No. 2:24-cv-4184

**JUDGE DOUGLAS R. COLE**
Magistrate Judge Silvain

## OPINION AND ORDER

In his October 14, 2025, Report and Recommendation, Magistrate Judge Silvain recommends that the Court (1) deny Plaintiff's motion to proceed in forma pauperis (IFP) and order Plaintiff to pay the full $405 fee necessary to commence a suit in federal court, (2) deny Plaintiff's motion for issuance of an order to the Ross Correctional Institution's prison cashier as moot, and (3) certify that an appeal of any Order adopting the Magistrate Judge's Report and Recommendation would not be taken in good faith. (R&R, Doc. 15, #141). Plaintiff objected. (Doc. 17). For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections (Doc. 17) and **ADOPTS** the R&R (Doc. 15).

## BACKGROUND

Pro se plaintiff Brian Keith Alford, a former federal prisoner currently in state custody at the Ross Correctional Institution (RCI), filed this action on November 20,

---

[1] Defendant Chambers-Smith appears on the docket as "DRC – Director Anette Chambers-Smith." The Court opts to omit Chambers-Smith's title, and to correct the spelling of her first name.

2024. (Compl., Doc. 1). Alford has so far filed four separate versions of his complaint in this matter. (*See* Doc. 1; Doc. 3; Doc. 13; Doc. 14). The most recent iteration—Alford's Third Amended Complaint (Doc. 14)—alleges claims under 42 U.S.C. §§ 1983 and 1985 against eighteen Defendants. (Doc. 14, #108; Doc. 15, #130). The matter came before Magistrate Judge Silvain on Alford's Motions to Proceed in Forma Pauperis[2] (Doc. 4; Doc. 12) and his Motion for Issuance of an Order to the Prison Cashier (Doc. 10). (Doc. 15, #130).

The Magistrate Judge's R&R explains that the Court had previously entered a Deficiency Order (Doc. 7) under the Prison Litigation Reform Act (PLRA) directing Alford to provide a "Certificate" page (i.e., page 8 of the Application and Affidavit form that this Court makes available to litigants), "completed and signed by the institutional cashier, and a certified copy of his prison trust fund account statement (or institutional equivalent) for the preceding six-month period." (*Id.* at #131 (citing 28 U.S.C. § 1915(a)). In response to that Order, Alford submitted a non-certified account statement,[3] (*see* Doc. 12), and a motion to compel the RCI cashier to provide the requested information, (Doc. 10). The Magistrate Judge then explains that typically he would have pursued this "request for the required account information." (Doc. 15, #131). In this case, however, he concluded that the PLRA's "three-strikes rule" bars Alford from proceeding IFP, and that this independent bar obviates the

---

[2] Alford filed another Motion to Proceed in Forma Pauperis (Doc. 18) as the Court was finalizing this Opinion and Order.

[3] Alford had already filed a non-certified account statement with his first motion to proceed IFP. (*See* Doc. 4-1).

2

need for any account information. (*Id.* (citing 28 U.S.C. § 1915(g)). Accordingly, the Magistrate Judge recommends that the Court deny Alford's motions to proceed IFP, and deny as moot Alford's motion to compel the cashier to provide the requested information. (*Id.*).

The Magistrate Judge began his analysis by noting that Alford is a frequent litigant in this Court who has filed nineteen civil rights actions since 1997. (*Id.*). In connection with that litigation history, the Southern District of Ohio has found that Alford has accumulated "three strikes" under the PLRA in several prior cases. (*Id.* (citing *Alford v. Mohr*, No. 1:15-cv-645 (S.D. Ohio Jan. 22, 2016) (ordering Alford to pay the full filing fee based on his previous dismissals); *Alford v. Chambers-Smith*, No. 2:20-cv-3879 (S.D. Ohio Jan. 19, 2021) (same); *Alford v. Schweitzer*, No. 2:22-cv-1652 (S.D. Ohio July 11, 2022) (same))). But since those earlier determinations, the Sixth Circuit decided *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024), which clarified the requirements to accumulate a strike under the PLRA. (*Id.*). In light of that new guidance, the Magistrate Judge reevaluated whether Alford has accumulated three strikes. (*Id.* at #132–37).

The Magistrate Judge started that analysis by summarizing the law surrounding prisoner IFP filings and *Crump*'s effect on that law. (*Id.* at #132–35). Generally, a plaintiff is required to pay a filing fee to initiate a suit in federal court. (*Id.* at #132 (citing 28 U.S.C. § 1914(a)). But a litigant who cannot afford to pay may seek leave to procced IFP. (*Id.* (citing 28 U.S.C. § 1915(a)(1)). If granted, the Court may waive the fee entirely, require only partial payment, or order periodic payments

3

over time. (*Id.* (first citing 28 U.S.C. § 1915(a)(1); and then citing 28 U.S.C. § 1915(b)(1)–(4))). Prisoners, however, may lose this privilege if courts have dismissed three or more of their prior actions or appeals on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief can be granted. (*Id.* (citations omitted)).

Since the PLRA's enactment, courts in the Sixth Circuit have assessed strikes to prisoners who filed so-called "mixed-claim actions," i.e., cases where some of the claims were dismissed for reasons "covered by" the PLRA but others were not. (*Id.* (citations omitted)). But that changed in 2024, when the Sixth Circuit handed down *Crump*. (*Id.*). There, the court held that two of Horace Crump's prior actions should not be assessed as strikes under the PLRA because they were "mixed-claim" actions. (*Id.* (citing *Crump*, 121 F.4th at 1110, 1112)). According to *Crump*, "all claims in a complaint, not just some of them, must be dismissed on grounds listed in the [PLRA] for the dismissal to count as a strike." (*Id.* at #133 (quoting *Crump*, 121 F.4th at 1111)).

With *Crump* in mind, the Magistrate Judge turned to this case. But even applying *Crump*'s smaller strike zone, he concluded that Alford still has accumulated three strikes. (*Id.* at #135–37).

The first comes from *Alford v. Wilkinson*, No. 2:97-cv-997 (S.D. Ohio) (dismissed October 29, 1997). (*Id.* at #135). There, the court dismissed Alford's complaint under § 1983 because it "failed to state a viable constitutional claim." (*Id.* (citation omitted)). So "[b]ecause the complaint was dismissed in its entirety for

4

failure to state [a] claim, a ground expressly enumerated in the PLRA's strike provision, it continues to constitute a strike under *Crump*." (*Id.* (citing 28 U.S.C. § 1915(g)).

Next, the Magistrate Judge considered *Alford v. Wilkinson*, No. 2:98-cv-226 (S.D. Ohio) (dismissed February 27, 1998). (*Id.* at #136). There, the court dismissed Alford's § 1983 complaint "because, among other things, it was barred by the statute of limitations." (*Id.*). So because the complaint was "dismissed for failure to state a claim, a ground expressly enumerated in the PLRA's strike provision, it also continues to constitute a strike under *Crump*." (*Id.* (citations omitted)).

Finally, the Magistrate Judge considered *Alford v. Rice*, No. 3:10-cv-424 (S.D. Ohio) (dismissed January 28, 2011), in which the court dismissed Alford's entire complaint "because, among other things, the statute of limitations had long since run on all the claims in the case." (*Id.* (cleaned up)). In dismissing the case, the court specifically found it to be "frivolous," a ground "expressly enumerated in the PLRA's strike provision." (*Id.* at #136–37 (citing 28 U.S.C. § 1915(g)). So the case "continues to constitute a strike under *Crump*." (*Id.* at #137 (citations omitted)).

Thus, even given *Crump*, the R&R concludes that Alford has accumulated three strikes and therefore cannot proceed IFP. But the R&R further recognized there is one exception to that rule—prisoners who are "under imminent danger of serious physical injury" can proceed IFP notwithstanding three strikes. (*Id.*). To meet the exception, though, "the threat or prison condition 'must be real and proximate' and the danger of serious physical injury must exist at the time the [initial] complaint is

5

filed." (*Id.* (citations omitted)). Neither "an assertion of past danger, nor speculative future harm" will do. (*Id.* (citations omitted)). Additionally, the type of injury alleged "must 'have potentially dangerous consequences such as death or severe bodily harm' to qualify as 'serious' under § 1915(g)." (*Id.* (citation omitted)). The "only relevant allegations" in applying these standards "are those in which [Plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." (*Id.* at #137–38 (citation omitted)).

The Magistrate Judge divided the allegations in the various versions of the complaints[4] Alford filed in this case into two categories: "(1) allegations regarding his housing situation at the time he initiated the case; and (2) allegations regarding his medical treatment for hepatitis-C at the time he initiated the case."[5] (*Id.* at #138 (citations omitted)).

In the first set of allegations, Alford maintains that, at the time he filed this case in November 2024, "he had recently been moved back to RCI housing unit 1A, where he had previously lived in February 2024." (*Id.*). He alleges that when he last resided there, he was housed "with a known PREA and homosexual inmate who smoked intoxicants." (*Id.* (quoting Doc. 14, #114)). To make matters worse, on February 15, 2024, this cellmate allegedly "caus[ed] multiple damages to himself,"

---

[4] Although the Magistrate Judge said that Alford has filed three complaints on the docket, he has, as noted, filed four. (*See* Doc. 1; Doc. 3; Doc. 13; Doc. 14).

[5] The Magistrate Judge also noted a third class of allegations—such as "claims of wrongful placement on academic probation" or "violation of the Public Records Act"—that cannot possibly implicate the imminent-danger exception because they do not involve Alford's physical security at all. (Doc. 15, #138). The Court agrees with this assessment and therefore sets these allegations aside for present purposes.

6

"accused [Alford] of causing the damage," and also accused Alford of "touching his [i.e., the cellmate's] buttocks." (*Id.* at #138–39). Though prison officials investigated the incident, neither Alford nor the cellmate were charged. (*Id.* at #139). Alford was relocated to a different housing unit and "told not to say or do anything to" his former cellmate. (*Id.*). All of this, Alford says, caused him to "lose property, the ability to timely file documents with the Courts, [and be] subjected to ridicule and shame." (*Id.*). But despite all that, Alford says, prison officials are now moving him back to unit 1A.

The Magistrate Judge concluded that these allegations are "insufficient to invoke the imminent danger exception." (*Id.*). That's because Alford's return to housing unit 1A—and the attendant prospect of Alford coming into contact with his former cellmate—raises a mere "possibility" that the cellmate "might pose a risk of injury." (*Id.* (citation omitted)). And that possibility is "neither sufficiently real nor sufficiently proximate to satisfy the requirements necessary to fit within the imminent danger exception." (*Id.* (citation omitted)).

As for the second set of allegations—those concerning Alford's treatment for hepatitis-C—the Magistrate Judge concluded that Alford's "conclusory allegations" are insufficient to allege "a danger of serious physical injury as a result of being presently denied adequate medical treatment." (*Id.* (citation omitted)). The thrust of Alford's allegations is that "Chief Medical Examiner Dr. Eddy has denied [Alford] treatment for hepatitis C since 2011 and that he now has a vitamin B-12 deficiency." (*Id.*). But although Alford "may be dissatisfied with his hepatitis-C treatment," he does not "allege[] that he is being denied all medical treatment for this condition or

7

for his vitamin B-12 deficiency." (*Id.* at #140). And a mere "dispute over the adequacy of medical treatment is also not enough to invoke the imminent danger exception to the three-strikes rule." (*Id.* (citations omitted)). So "[b]ecause [Alford's] allegations regarding his hepatitis[-]C treatment suggest merely a dispute over the adequacy of his treatment, they are insufficient to invoke the imminent danger exception." (*Id.*).

For these reasons, the Magistrate Judge recommends that the Court (1) deny Alford's motions to proceed IFP and order Alford to pay the full $405 filing fee within 30 days on pain of dismissal, (2) deny Alford's motion for an issuance of an order to the RCI prison cashier as moot, and (3) certify that an appeal of any Order adopting the R&R would not be taken in good faith. (*Id.* at #141).

The R&R further explains that Alford had 14 days to object, (*id.* at #142), a deadline that Alford met, (Doc. 17). In his Objections, Alford asks the Court to "take Judicial notice" of various facts. (*Id.* at #146). Those facts include, among others, that Alford "has been placed in imminent threat of danger or serious bodily harm when RCI Hospital staff delayed providing treatment to plaintiff interrelated to his chronic liver disease," and that Alford "nearly died from the failure to treat from December 7th, 2024 to December 10th, 2024[,] where he was hospitalized at OSU with double kidney infection, bladder infection, a blood clot on his left lung, and the loss of 36 pounds before he was transported to OSU medical center on December 23rd, 2024 where he remained until December 29th, 2024." (*Id.* at #147). After that, Alford was "housed in RCI Medical Hospital from December 29th, 2024 to January 2nd, 2025." (*Id.*). Alford's medical allegations aside, he also asserts that the "remaining claims"

8

in his complaint (e.g., those regarding the cellmate) describe facts that place him in imminent danger. (*Id.*).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Alford is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the

9

procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For any unobjected portions of an R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

The Magistrate Judge recommends that the Court (1) deny Alford's motion to proceed IFP and order Alford to pay the full filing fee or else face dismissal, (2) deny Alford's motion for an order to the RCI prison cashier as moot, and (3) certify that any appeal from this Opinion and Order would not be taken in good faith. (Doc. 15, #141).

Alford's Objections do not challenge the Magistrate Judge's determination that he has accumulated three strikes under the PLRA. But as best the Court can tell, they do contend that Alford's pleadings satisfy the imminent-danger exception. (Doc. 17, #146–48). Accordingly, the Court reviews the Magistrate Judge's assessment of

Alford's PLRA strikes for clear error, and the Magistrate Judge's evaluation of the imminent-danger exception de novo.

Starting with the former, the Court concludes that the Magistrate Judge did not commit clear error in his PLRA three-strikes analysis. As described above, the Magistrate Judge rightly observed that each of these three cases counted as strikes: (1) *Alford v. Wilkinson*, No. 2:97-cv-997 (S.D. Ohio), which the Sixth Circuit affirmed in *Alford v. Wilkinson*, 173 F.3d 428, 1999 WL 96732, at *1 (6th Cir. 1999) (Table); (2) *Alford v. Wilkinson*, No. 2:98-cv-226 (S.D. Ohio), which the Sixth Circuit affirmed in *Alford v. Wilkinson*, 188 F.3d 506, 1999 WL 644375, at *1 (6th Cir. 1999) (Table); and (3) *Alford v. Rice*, No. 3:10-cv-424 (S.D. Ohio), which the Sixth Circuit declined to adjudicate because it denied Alford's request to appeal IFP, (*see* Order of USCA, *Alford v. Rice*, No. 3:10-cv-424 (S.D. Ohio Jan. 11, 2012), Doc. 27). In each of the three, the district court dismissed the entirety of the action on PLRA-covered grounds, so each counts under *Crump*.

That means that Alford must meet the imminent-danger exception to proceed IFP. But he fails to do so. The exception applies when "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The Sixth Circuit has held that a plaintiff who endeavors to rely on the exception must plausibly allege that "the threat or prison condition [is] real and proximate and the danger of serious physical injury … exist[s] at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). Thus, an assertion that the prisoner "faced danger in the past is insufficient to invoke the exception." *Id.* at

11

797–98; *see also Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."). That said, in applying these standards, the Court must also remain mindful that "[t]he imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading," and that Alford, a pro se litigant, is thus "entitled to have his complaint liberally construed." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (quoting *Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011)). But even then, the exception is not met "when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless." *Id.* (quoting *Rittner*, 290 F. App'x at 798). At bottom, then, Alford must "show that his complaint alleged facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that he was under an existing danger at the time he filed his complaint." *Id.* (internal quotation marks omitted) (quoting *Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)).

As noted, the Magistrate Judge grouped Alford's allegations into two classes relevant here: (1) those regarding Alford's housing situation, and (2) those regarding Alford's medical treatment for hepatitis-C. (Doc. 15, #138). Start with the former. Alford's Objections assert that his "placement with a PREA inmate using intoxicants" places him in "imminent threat" of "death or serious bodily harm." (Doc. 17, #147). But even assuming that, at the time Alford filed this case, he was "moved back to the same cell in housing unit 1A as before, he merely alleges the 'possibility' that his cellmate 'might pose a risk of injury.'" (Doc. 15, #139 (quoting *White v. McKee*, No.

12

1:16-cv-601, 2016 WL 3226030, at *4 (W.D. Mich. June 13, 2016), *aff'd*, No. 16-2066, 2017 WL 3165081 (6th Cir. July 13, 2017))). And because "the only allegations of physical harm … were to [Alford's] cellmate, not to [Alford], that 'possibility' is 'neither sufficiently real nor sufficiently proximate to satisfy the requirements necessary to fit within the imminent danger exception.'" (*Id.*).

The second set of allegations—those involving Alford's hepatitis-C treatment—present a closer question. But ultimately, the Court concludes that they are insufficient for purposes of the imminent-danger exception. The Sixth Circuit has expressly held that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies" the exception. *Vandiver*, 727 F.3d at 587. But they must plausibly allege *facts* supporting that assertion—the exception is not met where a prisoner's allegations are "conclusory." *Id.* at 585. And here, none of the four versions of the complaint that Alford has filed on the docket presents "facts from which [the Court], informed by its judicial experience and common sense, c[an] draw the reasonable inference that [Alford] was under an existing danger at the time he filed his complaint." *Taylor*, 508 F. App'x at 492.

The only allegation in Alford's original Complaint on this front is his conclusory assertion that "Dr. Andrew Eddy failed to treat Plaintiff for a life-threatening illness (hep-C) in violation of the Eighth and Fourteenth Amendments." (Doc. 1, #5). Alford's Amended Complaint expands this allegation into a paragraph:

> Since 2011 Defendant Dr. Andrew Eddy denied Plaintiff treatment for a life-threatening illness ((Hep-c) (sic) which was the result of receiving tainted blood transfusion while in the Armed Forces in Tacoma, Washington, which has now been determined to have caused a B-12

13

> deficiency as a result of hepato-intestinal disease and now neuropathy/nerve damages to Plaintiff's feet and legs. Dr. Donato Borrillo, MD, JD, MS determined these facts on October 18th, 2024.

(Doc. 3, #32). The Second and Third Amended Complaints repeat this paragraph verbatim, and do not supplement it with any additional facts. (Doc. 13, #101; Doc. 14, #118). Note that while these allegations set forth the *conditions* from which Alford claims he suffers, they provide no facts regarding any treatment that he allegedly was denied or any risks allegedly arising from that denial (other than the conclusory reference to his condition being "life-threatening").

Such allegations stand in stark contrast to the allegations at issue in *Vandiver*, where the Sixth Circuit held that the plaintiff had sufficiently alleged an imminent danger based on denial of medical treatment. There, the petitioner stated "in multiple paragraphs of his complaint, and aver[ed] in his affidavit, that he [was] denied medical treatment." 727 F.3d at 587. More importantly, he identified the allegedly lacking treatment. He claimed, for example, that he needed, but was denied, "specialty care referral visits." *Id*. Additionally, the *Vandiver* plaintiff specifically pleaded risks he allegedly faced—"coma, death, physical loss of limbs and mental pain, mental anguish and emotional distress"—and the specific alleged denials of treatment giving rise to those risks—"defendants' past and present failure to provide him with physician prescribed special shoes, and transport vehicle, [and] a special diet and medication." *Id*. (cleaned up). Alford's pleadings make no similarly "detailed allegations showing a present danger of serious injury." *Id.* at 588.

Alford tries to cure that defect by providing additional details in his Objections. There, he explains that "RCI Hospital staff delayed providing treatment to plaintiff

14

interrelated to his chronic liver disease … from December 7th, 2024, to December 10th, 2024." (Doc. 17, #147). Alford says that the delay caused him to "nearly die[]," which led to Alford being "hospitalized at OSU with double kidney infection, bladder infection, a blood clot on his left lung, and the loss of 36 pounds." (*Id.*). The OSU stay lasted a little less than a week. (*Id.*). After that, Alford "was housed in RCI Medical Hospital from December 29th, 2024[,] to January 2nd, 2025." (*Id.*). This story is generally consistent with a "Notice to the Court" (Doc. 6) that Alford filed in January 2025. There, Alford reports that "he [was] treated for a life-threatening illness from December 7th, 2024 until present following admission to Ohio State University Wexner Medical Center on December 23rd, 2024." (*Id.* at #51).

A few problems, though. For one, none of these factual assertions appear in any of the four versions of the complaint that Alford filed. And ultimately, the Court must look to the pleadings to decide whether Alford has adequately alleged an imminent danger. *See Vandiver*, 416 F. App'x at 562. Beyond that, though, the additional facts set forth in the Objections also suggest that Alford was, in fact, receiving medical treatment. As best the Court can tell, Alford's Objections assert that RCI hospital staff "delayed" Alford's treatment, which led to a stay at an external hospital before Alford was ultimately returned to the care of RCI medical staff. (Doc. 17, #147). And again, this is all consistent with Alford's "Notice to the Court," in which he expressly states that he was "treated for a life-threatening illness." (Doc. 6, #51). Indeed, that very filing contains what appears to be a "Medical Services Treatment Pass" from RCI. (*Id.* at #55). And, while Alford might object to the adequacy of the

15

treatment he received, "disagreement with the healthcare provider's plan of care does not constitute a denial of treatment." *Tucker v. Kandulski*, No. 15-cv-11117, 2015 WL 5692909, at *4 (E.D. Mich. Sep. 28, 2015). Thus, even considering the matter de novo, the Court lands at the same spot—Alford has not alleged facts from which the Court can plausibly infer that he was under an existing danger at the time he filed his Complaint due to the care he was (or wasn't) receiving. *Taylor*, 508 F. App'x at 492.

In sum, Alford has accumulated three strikes under the PLRA. And because his pleadings do not satisfy the imminent-danger exception, he may not press his claims IFP.

## CONCLUSION

For the reasons above, the Court **OVERRULES** Alford's Objections (Doc. 17) and **ADOPTS** the R&R (Doc. 15). The Court therefore **DENIES** Alford's Motions to Proceed in Forma Pauperis. (Doc. 4; Doc. 12; Doc. 18). The Court further **ORDERS** Alford to pay the full $405 fee (a $350 filing fee plus a $55 administrative fee) within 30 days if he wishes to proceed with this action. Failure to pay the requisite fee will result in dismissal **WITHOUT PREJUDICE**. *See, e.g.*, *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the three strikes provision of § 1915(g)."). The Court further **DENIES** Alford's motion for issuance of an order to the prison cashier (Doc. 10) as **MOOT**. Finally, the Court **CERTIFIES**, under 28 U.S.C. § 1915(a)(3), that an appeal

16

of this Opinion and Order would not be made in good faith, and **DENIES** Alford leave to appeal IFP.

    **SO ORDERED.**

December 12, 2025
**DATE**

                        **DOUGLAS R. COLE**
                        **UNITED STATES DISTRICT JUDGE**