*Scanned at RCI and emailed to Southern Dist on December 28, 2025 by L. Birnbaum*
*No. of pages: 167*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| BRIAN KEITH ALFORD, | CASE NO:2:24-CV-4184 |
| Plaintiff, | Magistrate Peter Silvain Jr. |
| -vs- | District Judge Douglas R. Cole |
| ANNETTE CHAMBERS-SMITH, ET AL., | |
| Defendants. | |

MOTION FOR RELIEF OF JUDGMENT PURSUANT

TO FEDERL RULES CIVIL PROCEDURE 60(B)

(1)(4)(6)

Comes now Plaintiff, Brian Keith Alford, *pro se*, and hereby files his motion for Relief of Judgement of the Court's ORDER issued on December 12th, 2025 [DOC. 19]. A memorandum in support is attached hereto in support of Plaintiffs' request.

Respectfully submitted,

Brian Keith Alford A196-744
Ross Correctional Institution
P.O. Box 7010
Chillicothe, Ohio 45601
Plaintiff, *pro se*

1

## MEMORANDUM IN SUPPORT

Plaintiff, in the above captioned case, hereby files his motion for relief of Judgment of the Courts ORDER issued on December 12th, 2025 [DOC. 19] denying In Forma Pauperis Status due to Error, Void Judgment and Any Other Reason justifying Relief in the interest of justice.

The order overlooks significant issues raised in Plaintiffs Third Amended Complaint [DOC.19 AT PAGEID 17]. First and foremost, Plaintiff is not allowed to have page 8 of the Application and certified cashier's statement with the cashiers' signature on it according to the previous and current inspectors. Therefore, once Plaintiff submits the application and six months deposits with a self-addressed envelope and cash slip for postage, the Inspector is then required to forward the certified cashiers' statement (page 8) to the mail room for sealing and mailing to the Court. This procedure was done at least on two separate instances, yet the Inspector and/or mailroom failed to enclose Page 8 the certified cashiers' statement from the Cashier intentionally. [DOC. 19 PAGEID 2,3]. This is yet one of the Constitutional violations being committed here at Ross Correctional Institution by ODRC staff to impede litigation against other staff, which is retaliatory and damaging to Plaintiff.

2

This complaint arises out of the failure of Dr. Andrew Eddy to treat Plaintiff for a life-threatening illness (liver Disease) which has led to other health issues as recently as December 2024 in which Plaintiff nearly life his life due to ODRC staff failing to provide medical care in a timely manner, leading to double kidney infections, urinary tract infections, bladder infections and a blood clot on his left lung for which Plaintiff must utilize blood thinners for the rest of his life, was forced to utilize a fully-Cathe for seven months and continue to utilize a straight-Cathe in order to release himself. [see Alford V. Hawk, et. al., Case No. 2:25-cv-00187]. Since arriving into ODRC in 2011, Plaintiff has been systematically denied treatment for Liver Disease, in spite of obvious signs of serious live problems. The failure to treat for a life-threatening illness such as liver disease meets the imminent danger exception allowing Plaintiff to proceed In Forma Pauperis. The imminent danger exception was specific and not conclusory as the Magistrate and Judge assume.

Plaintiffs' objections to the Magistrates' Report and Recommendation was to the entirety of the Report and Recommendations, and Plaintiff detailed his objections.

3

In addition to being placed in imminent danger of death or serious bodily harm for failure to treat for life-threatening illness, Plaintiff was moved from housing Unit 3B into a cell with a known PREA inmate who smoked intoxicants all day/every day on the premise that Plaintiff was being moved into the Housing Unit as a Veteran and Merit Status Inmate where the doors would remain open all day and other amenities that were never granted, and was subsequently placed in danger of being harmed or worse, due to the cellmate having a full-blown episode causing multiple serious injuries to himself but fortunately, not to Plaintiff. Plaintiff was then placed in Restrictive Housing Unit for allegedly assaulting his cellmate and accused of touching his cellmate in a sexual manner, lost property, ridiculed, in spite of the obvious falsity of the cellmates' statements, and placed back in the same housing unit with a second cellmate who utilized intoxicants. Plaintiff's cellmate later admitted that he had lied and that he had caused his own injuries by smoking intoxicants, yet was never sanctioned or issued an incident report because of his false allegations. Although Plaintiff was subsequently moved back to housing unit 1A he was placed in a second cell with another cellmate who smoked intoxicants. The ridicule, shame and harm Plaintiff was subjected to was a result of ODRC's failure to remove Plaintiff from the cell with the PREA inmate which could have

4

led to Plaintiff having to cause damage to his cellmate in order to protect himself or possibly be physically injured in the mele. There was more than a "mere possibility" of Plaintiff's placement with the PREA inmate might cause a risk of injury, as Plaintiff suffered injury from the placement and failure of ODRC to act.

Plaintiff subsequently was accused of inappropriate behavior while attending college, placed on probation for over one year, and later placed in Restrictive Housing for attempting to obtain a correction of legal copies made for district court, and later restricted from video visits with his son and restricted from his son placing funds on his telephone account or trust fund account. Plaintiff was refused a viable investigation from the Inspector to prove loss of property through commissary products, and timely resolution of request for Public Records Request which denied viable award of statutory damages. In addition, Plaintiff was transferred to Southern Ohio Correctional Facility without justification, denied a bed side visit before his mother died, which was the result of seeking of grievance denying him access to the Courts [Third Amended Complaint at ¶22-34]. Because of these additional violations by ODRC staff Plaintiff faces additional imminent danger of death and serious bodily harm due to his age [68] and numerous health issues, the prospect of obtaining release on

5

parole in July 2026 which has been impeded due to ODRC's negligence and continued constitutional violations. To allege that these issues are not real and proximate amount to Error, deny Due Process and amounts to a Void Judgment, which requires relief from the judgment in the interest of justice.

Under Rule 60(a), clerical mistake in judgment or other error arising from oversight or omission may be corrected by court "at anytime," which literally means that power to correct such clerical mistake does not depend on whether motion for relief is made within reasonable time or within one year of judgment, as is required where relief is sought under Rule 60(b). Scola v. Boat Frances, R., Inc., 618 F.2d 147, 1982 A.M.C. 911, 29 Fed. R. Serv. 2d (Callaghan) 466, 1980 U.S. App. LEXIS 19240 (1st Cir. 1980).

Under Rule 60(a), clerical mistake in judgment or other error arising from oversight or omission may be corrected by court "at any time," which literally means that power to correct such clerical mistake does not depend on whether motion for relief is made within reasonable time or within one year of judgment, as is required where relief is sought under Rule 60(b). Scola v. Boat Frances, R., Inc., 618 F.2d 147, 1982 A.M.C. 911, 29 Fed. R. Serv. 2d (Callaghan) 466, 1980 U.S. App. LEXIS 19240 (1st Cir. 1980).

6

Because Plaintiff alleged that the court lacked jurisdiction over subject matter or parties or that <u>court acted inconsistent with due process of law</u>; Fed. R. Civ. P. 60(b)(4), therefore, applies. Hansen v. Caldwell's Diving Co., 2005 U.S. Dist. LEXIS 28095 (D.N.J. June 1, 2005).

The PLRA's three-strikes provision prohibits a prisoner from bringing a civil action or appealing a judgment in a civil action without prepayment of the filing fee if, while incarcerated, the prisoner has filed three or more actions that were dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted, "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Alford does not dispute that he has filed three or more actions that were dismissed for failure to state a claim. Instead, Plaintiff asserts that his allegations fell within the imminent-danger exception to the three-strikes rule. To satisfy that exception, Plaintiff must allege "facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." Vandiver, 727 F.3d at 585 (quoting Taylor v. First Med. Mgmt., 508 F. App'x 488, 492 (6th Cir. 2012)). Because "[t]he imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading," Plaintiff is "entitled to have his complaint liberally

7

construed" and "need [ ] only to assert allegations of imminent danger," rather than "affirmatively prove those allegations." Id. at 585 (first quoting Vandiver v. Vasbinder, 416 F. App'x 560, 562 (6th Cir. 2011), and then quoting Tucker v. Pentrich, 483 F. App'x 28, 30 (6th Cir. 2012)).

In his complaint, Plaintiff claimed that the defendants retaliated against him after he sought review of numerous constitutional violations. Plaintiff alleges that placing him in a cell with a known PREA inmate who smoked intoxicants which resulted in the cellmate having an episode causing multiple injuries to himself and blaming Plaintiff for his injuries, failing to treat for a life-threatening illness [liver disease] since 2011, erroneous conduct reports placing Plaintiff on Academic Probation from College and creating Atypical hardship by transferring from level 1A to level 4A security in retaliation for litigious activity and permitting Attorneys Representing ODRC in a pending civil action to make a determination of his eligibility for parole , denying Plaintiff the right to testify truthfully at a trial of another inmate who was assaulted without provocation by prison staff, appointment of attorneys in a civil action who refused to properly litigate Plaintiffs' damages on a civil action, and failing to take corrective action of these violations placed Plaintiff in imminent danger of death or serious bodily harm. [ See Exhibits 1 through 12 attached hereto]. Plaintiff alleged that failing

8

to correct these dangerous actions caused continued life-threatening illnesses to Plaintiff causing him to not be able to urinate for four days due to a food borne virus that was left untreated, which required his admission to Ohio State University James Cancer Center, the use of a Fully-Cathe for seven months, double kidney infection, bladder infection, loss of 36 pounds, problems with urination requiring the use of a Straight-Cathe, blood thinners for life, a blood clot on Plaintiffs' left lung, and retaliation for seeking redress of grievance of these violations [see Complaint at ¶ 22-34][see also Exhibits 1 through 12 attachd hereto].

    The Sixth Circuit has held that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." Vandiver, 727 F.3d at 587. Because Alford sufficiently alleged that he is under imminent danger of serious physical injury due to the retaliatory denial of proper medical treatment, the district court's denial of leave to proceed in forma pauperis is an abuse of discretion.

    In the past, Plaintiff has <u>paid the filing fee in full</u> for at least three (3) civil actions, only to have his actions dismissed unjustifiably without a thorough review of his claims. To continue to insulate the continued constitutional

9

violations of ODRC staff will only lead to further injury to prisoners as in the case of Meadows V. Coppick, 2025 U.S. District LEXIS 171413 in which a jury awarded damages against ODRC staff in the total amount of $404,000.00 for excessive use of force and the ODRC staff admitted they would not have done anything different and did not regret their actions. Plaintiff is an honorably discharged disabled veteran who served to protect this country with multiple disabilities [See Exhibit 7 attached hereto]

      Plaintiff's dispute is not over the adequacy of medical treatment he received, and is directly related to ODRC staff's deliberate indifference to his serious medical needs. The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. In Farmer V. Brennan 511 U.S. 825 (1994) the inmate alleged that prison officials violated the Eighth Amendment by their deliberate indifference to his safety. The inmate asked the court to define "deliberate indifference" as civil-law recklessness, which utilized an objective standard. The prison officials urged the Supreme Court to adopt an approach consistent with recklessness in the criminal law, which was based upon a subjective standard. In Farmer V. Brennan 511 U.S. 825 (1994) the Court rejected the inmate's invitation to adopt an

10

objective test for deliberate indifference. Instead, the Court held that the prison officials could not be found liable under the Eighth Amendment for denying the inmate humane conditions of confinement unless the officials knew of and disregarded an excessive risk to inmate health or safety. The prison officials needed to be both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they also had to draw the inference. However, the Court concluded that the summary judgment record did not so clearly establish the prison officials' entitlement to judgment as a matter of law on the issue of subjective knowledge. Although the Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling, 509 U.S. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive

11

adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). See Helling, supra, [*833] at 31-32; Washington v. Harper, 494 U.S. 210, 225, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990); Estelle, 429 U.S. at 103. Cf. DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 198-199, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989). Plaintiff submits that the named Defendants herein have violated these standards. [Complaint at ¶22-34]. Specifically in light of the fact that The Director has been place on notice of these Constitutional violations on numerous instances [See Exhibit 4 attached hereto].

## CONCLUSION

It is therefore requested that Plaintiff be granted relief from the Court's ORDER denying In Forma Pauperis Status and allow Plaintiff to proceed on the merits of his allegations.

Respectfully submitted,

*Brian Keith Alford A196-744*
Brian Keith Alford A196-744
ROSS CORRECTIONAL INSTITUTION
P.O. BOX 7010
CHILLICOTHE, OHIO 45601

12

PLAINTIFF, *PRO SE*

VERIFICATION:

I hereby swear under penalty of perjury that the information contained herein is true and accurate to the best of my knowledge and belief pursuant to 28 U.S.C. 1746 and that this request was E-filed at Ross Correctional Institution on December 28th, 2025 with a hard copy placed in the prison mailbox postage pre-paid this 28th day of December, 2025.

*[signature]*
BRIAN KEITH ALFORD A196-744
PLAINTIFF, *PRO SE*

13