

Re-
SCANNED AT RCI and E-Mailed to
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
on June 15, 20 26
by L. Birnbaum

No. of Pgs. 317

SCANNED AT RCI and E-Mailed to
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
on June 11, 20 26
by L. Birnbaum

No. of Pgs. 317

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

## EASTERN DIVISION AT COLUMBUS

BRIAN KEITH ALFORD,

    Plaintiff,

-vs-

DRC-DIRECTOR, ANNETTE

CHAMBERS-SMITH,

Dr. Andrew Eddy, Gary Wynn Peterson,

Patricia Horner, Marcy Vonderwell,

Joseph Sobecki, William Cool, Warden,

N. Neff, Investigator, R. Huff,

Unit Manager, Todd Diehl, Inspector,

C. Spencer, Unit Manager, B. Stamper,

B. Williams, Unit Manager, B. Smith,

Lori Peterman, J. Stegall, Principle,

Officer Farley, Ms. Driesbach, Secretary,

    Defendants.

CASE NO: 2-24-CV-4184

District Judge Douglas Cole

Magistrate Judge Peter B. Silvain Jr.

Fourth Amended Complaint

Jury Demand Endorsed Herein

Each Defendant is being sued

in their Official and Individual

Capacities.

The initial Complaint is adopted

by reference and made a part hereof,

Including all documents/and or

Exhibits attached hereto and to

Be submitted during the Discovery

Process

I. **FORWARD**

While this complaint may be lengthy, Plaintiff understand that many prisoner cases are dismissed because the prisoner failed to detail a chronology of events inferring retaliation. The following is about as short and concise as Plaintiff can convey without compromising essential information, and meet the requirements of Fed. R. Civ. P. 8.

II. **JURISDICTION**

1. This is a civil rights action authorized by 42 U.S.C. 1983, and 1985, but not limited to. This Court has jurisdiction under 28 U.S.C. 1331 and 1343(a)(3). Plaintiff seeks declaratory and preliminary injunctive relief, to include a Temporary Restraining Order against Defendants pursuant to 28 U.S.C. 2283 and 2284, and Rule 65 of the Federal Rules of Procedure.

2. This Court is an appropriate venue under 28 U.S.C. 1391 (b)(2) because it is within the District where the events giving rise to the claims herein occurred.

3. Plaintiff invokes pendant jurisdiction seeking applicable relief under Ohio Law.

III.    PRELIMINARY STATEMENT

4.  This action is brought against Defendants individually and/or working in concert with one another, for retaliation against Plaintiff for his exercise of his FIRST, FOUTH, EIGHTH, and FOURTEENTH AMENDMENT rights (including access to the courts and denial of medical treatment for life-threatening illness), in a conspiratorial magnitude in some instances, with one or more Defendants having knowledge and/or involvement in a campaign of harassment and/or retaliatory agenda, but not limited to, which resulted in actual injuries to Plaintiff, including but not limited to, loss of property, opportunity for freedom from incarceration, damage to Plaintiff's person and character, and an inability to timely file documents necessary to challenge his conviction and/or conditions of confinement. This action also involves interference with civil rights, denial of due process, cruel and unusual punishment, deliberate indifference to Plaintiff's serious medical needs, discrimination (including racial) and a total inability to follow Institutional Policy, Rule and Procedures, selective punishment, not limited to. Further, this action request that this Court grant Declaratory Judgment,

Preliminary Injunction and Temporary Restraining Order where applicable, regarding OAC 5120-9-31(A), (H), (L), OAC 5120-0-3(A), (C), (D), OAC 5120-9-04, DRC Policy 31-SEM-01, 02 Policy IV and V(c), but not limited to.

## IV. EXHAUSTION OF ANY ADMINISTRATIVE REMEDIES

5. Plaintiff exhausted all available remedies available to him prior to commencing this action.

## V. PARTIES

6. At all times relevant in this complaint, Plaintiff was an inmate confined within the care and custody of Ohio Department of Rehabilitation and Corrections (ODRC) under Serial Number A196-744.

7. At all times relevant to this complaint, Defendant Annette Chambers-Smith was the Director of Ohio Department of Rehabilitation and Corrections and is the highest authorization over the operations and management of the prison system in Ohio and those confined under its jurisdiction pursuant to R.C. 5120-01.

8. At all times relevant to this complaint, Defendant Dr. Andrew Eddy was the Chief Medical Examiner for ODRC and the highest authority

over operations and management of the Medical Department of ODRC pursuant to R.C. 5120.38.

9. At all times relevant to this complaint, Defendant William Cool was the Warden of Ross Correctional Institution and the highest authority over the management and operations at the Ross Correctional Institution pursuant to R.C. 5120.38.

10. At all times relevant to this complaint, Gary Wynn Peterman was the Magistrate assigned to Cases in the Court of Claims of Ohio and oversaw the trial for Blake Williams for which Plaintiff was subpoenaed to testify on Jun e26th, 2024 at 9:30 a.m. in Case No. 2023-00100JD [2024-Ohio-3219] in Franklin County.

11. At all times relevant to this complaint, Patricia Horner was an attorney appointed to represent Plaintiff in Case Number Alford V. Zilles, Case 3:21-CV-1123.

12. At all times relevant to this complaint, Marcy Vonderwell was an attorney representing ODRC in Alford V. Zilles, Case NO. 3:21-CV-1123 and Alford V. Pressley, et. Al., 2:24-CV-34.

13. At all times relevant to this complaint, Todd Diehl was the Inspector at the Ross Correctional Institution and was the person responsible

for the resolution of informal complaint, grievances, and providing public records request pursuant to OAC 5120-9-31 and R.C. 149.43 et. Seq.

14. At all times relevant to this complaint, N. Neff was the Investigator at Ross Correctional Institution and responsible for investigating incidents involving disciplinary actions/resolutions against prisoners.

15. At all times relevant to this complaint, C. Spencer was the Unit Manager of Housing Unit 3A/A at the Ross Correctional Institution where Plaintiff was formerly housed and responsible for the normal operations of the bed assignments.

16. At all times relevant to this complaint, B. Williams was the Unit Manager of housing unit 1A/B at Ross Correctional Institution where Plaintiff was formerly housed and was responsible for the bed assignments, investigations completed by the Unit and operations of the Unit.

17. At all times relevant to this complaint, B. Stamper was the Unit Sergeant assigned to Housing Unit 3A/B at the Ross Correctional

Institution where Plaintiff was formerly housed and responsible for assisting in the assignment of bed moves in the housing Unit.

18. At all times relevant to this complaint, B. Smith was the Unit Sergeant of Housing Unit 1A/B at the Ross Correctional Institution and responsible for assisting in the bed assignments and locating property, assisting in investigations completed by the Unit.

19. At all times relevant to this complaint, R. Huff was the Unit Manager of Housing Unit 6A/B and also assigned to facilitate College classes for Sinclair Community College at the Ross Correctional Institution.

20. At all times relevant to this complaint, Lori Peterman was the Unit Manager at housing Unit D1/D2 at the London Correctional Institution and responsible for assisting prisoners with bedside visits, parole preparation, and contacting the Court via telephone communication for Case Status of pending cases.

21. At all times relevant to this complaint, J. Stegall was the Principle at the Ross Correctional Institution and responsible for scheduling prisoners for Law Library utilization and overseeing the copying of legal documents.

7

22. At all times relevant to this complaint, Officer Farley was the person assigned to the High Scholl Area where Mr. J. Stegall's office was located, and conveying vital information to Mr. Stegall.

23. At all times relevant to this complaint, Ms. Driebach was the Secretary for Housing Units 1, 2, 3, and 4 at the Ross Correctional Institution and responsible for reviewing photos on GTL tablets and approval of same, as well as ensuring approval/disapproval of video visits on GTL, commissary deposits, telephone deposits and verifying correct information related to same, as well as facilitating sign in logs for College Classes at Sinclair Community College.

## VI. CHRONOLOGY OF EVENTS GIVING RISE TO RETALIATION/DAMGES/ONSTITUTIONAL VIOLATIONS RELATED TO THE INSTANT COMPLAINT

24. On February 2nd, 2024 Plaintiff was moved from cell 3B-123 to cell 1A-128 with a known Homosexual and PREA inmate who smoked intoxicants. Plaintiff would not refuse the cell assignment for the threat of placement in Restrictive Housing, and was informed the cell assignment would be temporary. However, in February 15th, 2024 Plaintiff's cellmate Ellis smoked an intoxicant and has a

complete "episode" causing multiple injuries to himself and accused Plaintiff of causing the injuries. Plaintiff was place in Restrictive Housing on "unit investigation" in spite of knowledge that Ellis had lied to prison staff and no evidence to support the allegations. Ellis later reported to prison staff that Plaintiff had allegedly "touched his buttocks" when the assault could not be substantiated. The investigation was later turned over to Defendant Investigator N. Neff, who interviewed Plaintiff regarding the allegations rather than Unit Staff Defendants B. Williams and B. Smith, and advised Plaintiff of the new allegations [physically touching his buttocks], and advised Plaintiff that he would be released and not to touch or say anything toe Ellis. Plaintiff was moved back to Housing Unit 3B-123 and Ellis was moved back to 1A without an incident report in spite of Ellis admitting to lying to Investigator N. Neff and Unit staff. As a result, Plaintiff suffered loss of property, the ability to timely file documents with the Courts, subjected to ridicule and shame as a result of being placed in the cell with a known homosexual. Defendants B. Williams, B. Smith, and N. Neff's failure to property investigate the issue resulted in damage to Plaintiff's property and

reputation. Specifically in light of the fact that Plaintiff has been trying to overcome a similar situation in which he has received another cell mate who is an openly gay inmate who is also PREA, in violation of the Federal PREA regulations and regulations [see Exhibit 1 attached hereto]. On November 11th, 2024 on Veterans Day Plaintiff was moved back to Housing Unit 1A into a different cell under the guise of the Housing Unit be "Honor Unit" and Veterans Housing Unit with promises of the cell doors remaining open, additional privileges which included purportedly regular fund raisers. Plaintiff advised he did not want to move, but was told if he did not he would be placed in Restrictive Housing Unit. Although Plaintiff had been passed to Large Program Room and asked to complete the sign-up sheet for this move, he advised at the time he signed up that he did not want to move until the Housing Unit was up and running as a Veterans/Honor Unit. Plaintiff was primarily apprehensive about the move due to the previous incident with Ellis. Plaintiff contacted Defendants B. Williams, C. Spencer, B. Stamper and B. Smith regarding moving back to Housing Unit 3B, his request was denied in retaliation for seeking redress of grievance

for the two cell assignments and for his continued litigation with various ODRC staff here at Ross Correctional Institution, the "Good Ole Boy" network [See Exhibit 2 attached hereto].

25. In November 2023 Defendant R. Huff accused Plaintiff of violating a rule infraction of moral turpitude while Plaintiff was in class at Sinclair Community College listening to a professor via web cam. The allegation was based upon a prior rule violation purportedly committed by an Aramark Worker who was later fired for alleged illegal interactions with prisoners. As a result of the accusation, Plaintiff's person and character were damaged by placing him on academic probation while waiting re-entry to complete his classes, as well as ridiculed. [See Exhibit 3 attached hereto].

26. On June 28th, 2023 Patricia Horner, ESQ was assigned to Plaintiff's civil action in case no. 3:21-CV-1123 Alford V. Zilles, et. Al. While assigned to Plaintiff's case, Defendant Horner failed to properly serve two Defendants in the case, refused verify information pertinent in order to obtain cash advance in order to hire a medical expert, and allowed appointment of a medical expert who did not have Plaintiff's interest paramount in the case, and failed to

mediate viable settlement for Plaintiff's damage to his feet, and failed to request Plaintiff's medical records through discovery of his medical records from 1996 to 1999 with ODRC [Ohio Department of Rehabilitation and Corrections, 2000 to 2011 with FBOP [Federal Bureau of Prisons], and from 2011 through 2017 with ODRC which prejudiced his civil action. This failure denied Plaintiff the right to show a causal connection to his medical condition for neuropathy while as Belmont Correctional Institution, which requires a size 12 3-E boot. [Exhibit 4 attached hereto].

29. On October 3rd, 2024 Defendant Sobecki replaced Defendant Horner in Civil Action Alford V. Zilles, et. Al., yet failed to obtain Plaintiff's medical file from 1996 to 1999 with ODRC, 2000 to 2011 with FBOP, and 2011 to 2017 with ODRC in order to show a causal connection to Plaintiff's medical injury and his medical conditions diagnosed while at Belmont Correctional Institution which require size 12 3-E boots for circulation and balance issues with scoliosis and degenerative spine disorder. On October 19th, 2024 Defendant Sobecki informed Plaintiff that his case would be dismissed without prejudice.

This caused damage to Plaintiff's person and cause of action.[ See Exhibit 5 attached hereto].

30. On November 22nd, 2024 Defendant Marcy Vonderwell, an attorney representing ODRC in Alford V. Zilles, Case No. 3:21-CV-1123 and Alford V. Pressley, Case No. 2:24-CV-34 called Ross Correctional Institution unit staff to attempt to force Plaintiff to withdraw his Motion for Discovery request filed on November 15th, 2024, which amounted to attorney misconduct and judicial misconduct. In addition, Defendant Vonderwell attempted to railroad Plaintiff's case by offering a third pair of tennis shoes from regular approved vendors of ODRC, which Plaintiff can not wear, and wanted to send Plaintiff for therapy for inversible damage to his feet and legs caused by ODRC's negligence in failing to provide properly fitted footwear since 2011. [See Exhibit 6 attached hereto].

31. Since 2011 Defendant Dr. Andrew Eddy has consistently denied Plaintiff treatment for a life-threatening illness (HEP-C) which was the result of Plaintiff having maxilo-facial surgery to correct his bite while in the United States Armed Force and received a blood

transfusion for the surgery, which was the result of a B-12 deficiency as a result of hepato-intestinal disease and now neuropathy/nerve damage to his feet and legs. More specifically, since Plaintiff has contracted the COVID-19 virus twice and nearly died the first time he contracted it. The CDC has issued reports showing serious complications for people who suffer from liver disease. Plaintiff continues to suffer from the end effects of the disease such as weight loss, diarrhea, nausea, vomiting, stomach pain and swelling, and elevated ALT levels [See Exhibit 7 Affidavit of Dr. Donato Borrillo, MD, JD, MD;  CDC Report on What to know about liver disease and COVID-19; passes for Health Services attached hereto].

32. Since March 2024, Defendant Todd Diehl, Inspector of Ross Correctional Institution, has refused to provide Plaintiff vital documents under the Public Records Request under the Public Records Act needed for continued litigation which prejudiced Plaintiff and caused damaged to his person by denying challenges to his conditions of confinement. This denial prevented Plaintiff from obtaining a favorable Mandamus action seeking $10,000.00 in statutory damages.

In addition, Defendant Diehl failed to render timely decisions in Informal Complaints and Grievances involving constitutional violations by Ross Correctional Institution Staff. Specifically in light of the recent hospitalization of Plaintiff in 2024 with an additional life-threatening illness which was the result of a food borne virus that caused Plaintiff double kidney infection, urinary tract infection, bladder, a blood clot on his left lung, inability to urinate on his own since 2024 with the use of a FULLY CATHE for six month and the continued use of STRAIGHT CATHE [See Exhibit 8 attached hereto].

33. On June 26th, 2025 Defendant Gary Wynn Peterson denied Plaintiff the right to give testimony for Blake Williams involving an unprovoked attack by prison staff against Mr. Williams, in spite of being subpoenaed to testify for Mr. Williams at trial. Defendant William Cool was placed on notice of the violations alleged herein to violate Plaintiff's and Mr. Williams constitutional rights by N. Neff and other staff to ensure Plaintiff's presence to give testimony in Mr. Williams behalf. His complacency denied me the right to testify regarding wrongs committed by ODRC staff [See Exhibit 9 attached hereto].

15

34. Defendant Lori Peterman denied Plaintiff the right to place a call to check the status of a pending civil action pending on appeal in Sixth Circuit Court of Appeals in Alford V. Mohr, 1:16-CV-00645 because "Gary Mohr is my supervisor and he pays my bills". Plaintiff stated I don't understand the relevance, I only want to place a call to my Case Manger to see if I missed a deadline. Defendant Peterman then stated "That's because you don't give a fuck". Defendant Peterman also denied Plaintiff a bedside visit to his dying mother Louella Alford who had been hospitalized for a life-threatening illness, and failed to provide Plaintiff with a timely telephone call to speak with his mother, by advising Plaintiff to come back in 30 minutes to try a again on three separate instances. Plaintiff did not get through to his mother's room until one and one-half hours later, and she had already passed away, When Plaintiff begin to cry, Defendant Peterman advised Plaintiff that he could "Go into the quiet-room if he needed more time, but Plaintiff declined. Defendant Peterman later instructed Defendant Salyers to construct a conduct report without provocation where he was housed in Limited Housing Unit for thirty-two days and his status raised from 1a to 4a and sent to Southern Ohio Correctional Facility where he

received an additional sixty-month continuance by Adult Parole Authorities, with an additional conduct report written by Defendant Peterman and denied Plaintiff the right to call witnesses in his behalf

After Plaintiff reported Defendant Peterman and a Case Manager to PREA Tips line for sexual harassment. In addition, Plaintiff was only allowed to transfer to SOCF with one 2.4 cubic foot legal box and an additional 2.4 cubic foot legal box was destroyed by prison staff after Plaintiff completed a cash slip authorizing prison staff to mail the legal box to his father Willie C. Alford, Dayton, Ohio., which prevented Plaintiff from challenging his wrongful conviction or to attack conditions of confinement. [See Exhibit 10 attached].

35. On May 23rd, 2025 Plaintiff obtained copies from Ross Correctional Law Library that were missing every other page, and the document was due in federal court on May 19th, 2025. Prior to this date, Plaintiff had attempted to obtain access to law library in order to copy the document for mailing without success. Current appeal of grievances against Defendant J. Stegall, Principle had ben pending related to access to law library to complete the litigation, the missing legal

copies, and e-filing of a document to Supreme Court of Ohio which was never e-filed, and when the originals were returned pages were missing. Defendant J. Stegall was untruthful by informing the Defendant Todd Diehl, Inspector when this was investigated that he had advised Plaintiff that he could not ensure the documents to Supreme Court would go through because I was the first person who had e-filed to Supreme Court of Ohio. This was a total falsity, as Plaintiff was never advised the document might not go through, and in fact Mr. Watley, Law Clerk at Ross Correctional was the first person to e-file documents to Supreme Court before Plaintiff and had no problems with the documents going through. On May 27th, 2025 when Defendant J. Stegall had not issued a pass to have the copies corrected per three kites sent to Defendant J. Stegall in order to obtain a speedy pass for same, Defendant Farley took the information from Plaintiff and agreed to pass the information on to Defendant J. Stegall twice in the same day, and advised she had done her part. Plaintiff exited the North School area after thanking Defendant Farley. Plaintiff checked back the next day with Defendant Farley during the noon meal when no pass had been issued, and was told that Defendant Farley had been

informed that if Plaintiff returned a third time he was to be hand cuffed and placed in Restrictive Housing on May 28th, 2025 and found guilty based upon a conduct report written by Defendant J. Stegall upon the erroneous information given to him by Defendant Farley. Plaintiff requested body cam footage and footage from the North School area as proof he had never been warned by Defendant Farley but they were never produced. Plaintiff was placed in Limited Privilege Privileged Housing from May 28 to June 2nd, based upon the erroneous information given by Defendant Farley and accepted as true by Defendant J. Stegall. In addition, other acts of retaliation continued involving additional copies made by Officer Rumer, who withheld the copies after making them and later threatened Plaintiff when Plaintiff filed informal complaint and grievance regarding the threats and withhold of copies[Exhibit 11 attached hereto].

36. On July 5th, 2025 my son Joshua Alford was unable to video visit with his son Joshua Alford on GETTINGOUT app. Plaintiff contacted Defendant Driesbach regarding this issue, and Defendant Driesbach agreed to fix the problem However, Plaintiff later learned that Defendant Driesbach has corrupted my visiting deposits as well which

prevented my son from depositing funds into my trust fund account, and prevented ANYONE from depositing funds onto my telephone account. After contacting Unit Staff and filing of ICR and grievance, I was told that there were no blocks at the institution level, or at cashier's office, and that my son should be able to make deposits without problems. GTL informed my son they had not initiated any blocks and that my son, and that the problem was on the institutional level. This action was done in retaliation for filing of this civil action against Defendant Spencer/Unit Manager who is Ms. Driesbach's supervisor [See Exhibit 12 attached hereto]. Prior to the filing of this action, none of the problems Plaintiff experienced were taking place.

37. Defendant Annette Chambers-Smith was placed on notice of these violations yet failed to act and acquiesced in the Constitutional violated stated herein.

VII. LEGAL CLAIMS

38. Each named Defendant worked individually and or/in concert with one another at times, commit the violations committed herein, which place Plaintiff

under the threat of serious danger or death warranting waiver of the filing fee and granting of in forma pauperis status.

## VII. PRAYER FOR RELIEF

A. A declaration that the acts/omissions herein violated Plaintiff's rights under the United States and Ohio Constitutions.

B. A Preliminary injunction and temporary restraining order to prevent further violations by these and future defendants from violations of Plaintiff's constitutional rights.

C. Nominal damages authorized by law and determined by a jury of this Court.

D. Punitive damages for Plaintiff against each defendant in excess of $1,000,000.00 with the exact amount to be determined by a jury.

E. A jury trial on all issued triable by jury.

F. Plaintiff's costs in this action.

G. Appointment of counsel.

H. Any additional relief this Court deems just, proper, and equitable.

**VERIFICATION:**

I hereby swear under penalty of perjury that the information contained herein is true and accurate to the best of my knowledge and belief pursuant to 28 U.S.C. 1746.

Brian Keith Alford A196-744

Ross Correctional Institution

P.O. Box 7010

Chillicothe, Ohio 45601

Plaintiff, *pro se*